# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

**Civil Action No.**_____

LEHMAN BROTHERS HOLDINGS INC,

        Plaintiff,

v.

UNIVERSAL AMERICAN MORTGAGE COMPANY, LLC,

        Defendant.

## COMPLAINT

Plaintiff, Lehman Brothers Holdings Inc. ("LBHI"),[1] by and through its undersigned attorneys, and for causes of action against Defendant Universal American Mortgage Company, LLC ("Universal"), alleges as follows:

---

[1] Plaintiff Lehman Brothers Holdings Inc. ("LBHI") commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on September 15, 2008, in the United States Bankruptcy Court of the Southern District of New York (the "Bankruptcy Court"). On December 6, 2011, the Bankruptcy Court entered an order confirming LBHI's Modified Third Amended Chapter 11 Plan. LBHI's chapter 11 plan became effective on March 6, 2012, and LBHI is authorized to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

In August 2009, the Bankruptcy Court authorized LBHI to pursue claims with respect to the origination and purchase of residential mortgage loans. LBHI is pursuing that exact type of claim here and prosecuting this case to preserve the value of its assets for the benefit of its creditors.

## I. NATURE OF ACTION

1. At all times relevant hereto, Lehman Brothers Bank, FSB ("LBB," and collectively with LBHI, "Lehman") purchased mortgage loans from Universal pursuant to a series of written contracts. LBB subsequently assigned its rights under those contracts to LBHI. With respect to certain of these mortgage loans, Universal breached provisions of the contracts that required it to repurchase from, or indemnify Lehman for mortgage loans which failed to comply with the parties' contracts. By this action, LBHI seeks to recover money damages for injuries that have been sustained as a result of Universal's failure or refusal to honor its obligation to repurchase loans and/or indemnify Lehman for its incurred losses.

2. The claim presented in this Complaint was originally Count VIII of LBHI's 8-count complaint in Case No. 11-20859-CIV-KING, filed in the Southern District of Florida. Pursuant to a ruling by the District Judge at the pretrial conference on January 4, 2013, and a subsequent Order entered on January 9, 2013, this claim was dismissed without prejudice to be re-filed as a separate cause of action, because the District Judge was of the opinion that each loan must be filed separately, rather than joined within one action.

## II. PARTIES

3. Plaintiff LBHI is a Delaware corporation with its principal place of business in New York, New York.

4. Defendant Universal is a Florida limited liability company with its principal place of business at 700 N.W. 107th Avenue, Suite 400, Miami, Florida.

### III. JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff LBHI and Defendant Universal, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Personal jurisdiction comports with due process under the United States Constitution and the long-arm statutes of Colorado because Universal has been registered to do business in Colorado since 2002 and has maintained an agent in the state for the last ten years.

7. Universal has purposefully availed itself of the benefit of doing business—both with and without Lehman—in Colorado. On information and belief, Universal's business in Colorado includes, but is not limited to, mortgage lending operations.

8. In 2004, Universal entered into a business relationship with the Lehman entities pursuant to which Universal would sell residential mortgage loans to Lehman. That relationship was overseen by Aurora Loan Services, LLC ("Aurora"), a Lehman subsidiary then based in Littleton, Colorado.

9. Universal has had continuous and systematic communication with Lehman entities in Colorado, including with respect to the loans and related transactions at issue in this case. This includes: (1) recertification of their ability to originate loans; (2) securing delegated underwriting authority, which affected Universal's ability to approve mortgage loans to sell to Lehman with less oversight from Lehman; and (3) responding to repurchase demands issued by Lehman or its agent from Colorado.

10. Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events that give rise to the claims occurred in this District and because the division of

LBHI that oversees its residential mortgage loss recovery program is based in Greenwood Village, Colorado, and thus its witnesses and documents are located here.

## IV. FACTUAL ALLEGATIONS

11. At all relevant times, Lehman engaged in the purchase and sale of mortgage loans.

12. Universal engages in mortgage lending, as well as the sale of mortgage loans on the secondary market to investors such as Lehman.

13. Universal entered into a written Loan Purchase Agreement (Servicing Released Transactions) dated September 20, 2005 with LBB and thereafter amended the Agreement by Addendum dated October 1, 2006 (together the "Agreement"). A true and correct copy of the Agreement is attached hereto as **Exhibit 1**.

14. The Agreement specifically incorporates the terms and conditions of the Seller's Guide of Lehman's agent, Aurora Loan Services LLC, which sets forth additional duties and obligations of Universal.

15. The Seller's Guide in its entirety is valid and binding upon Universal. Attached hereto as **Exhibit 2** are the specific Sections of the Seller's Guide most directly pertinent to the claims in this Complaint.

16. The Agreement and the Seller's Guide set forth the duties and obligations of the parties with respect to the purchase and sale of mortgage loans, including but not limited to purchase price, delivery and conveyance of the mortgage loans and mortgage loan documents, examination of mortgage loan files and underwriting, representations and warranties concerning the parties and individual mortgage loans purchased or sold, and remedies for breach.

17. With respect to each of the loans sold to Lehman under the Agreement and Seller's Guide, Universal made a number of representations, warranties, and covenants concerning the mortgage loans including but not limited to the following:

(a) the validity of all mortgage loan documentation;

(b) the accuracy and integrity of all information and documentation regarding borrower identity, income, employment, credit, assets, and liabilities used in making the decision to originate the mortgage loans;

(c) occupancy by the borrower of the property securing the mortgage loan;

(d) the ownership, nature, condition, and value of the real property securing the respective mortgage loans; and

(e) the conformance of the mortgage loans with applicable underwriting guidelines and loan program requirements.

18. Universal also represented and/or warranted that no error, omission, misrepresentation, negligence, fraud, or similar occurrence took place with respect to the mortgage loans by any person involved in the origination of the mortgage loans, and that no predatory or deceptive lending practices were used in the origination of the mortgage loans.

19. Universal further represented and/or warranted that it had the ability to perform its obligations under, and satisfy all requirements of, the Loan Purchase Agreement and Seller's Guide.

20. Moreover, Universal agreed to repurchase any loan that was subject to an Early Payment Default, as defined below.

21. Universal sold mortgage loans to LBB pursuant to the terms of the Agreement and Seller's Guide, including Loan ****1878 (Watermann).

22. LBB purchased Loan ****1878 from Universal.

23. LBB purchased Loan ****1878 in reliance upon the representations, warranties, and covenants contained within the Agreement and Seller's Guide, as set forth in Section 701 of the Seller's Guide, which provides:

> Seller acknowledges that Mortgage Loans are purchased in reliance upon: (i) the truth and accuracy of Seller's representations and warranties set forth in the Loan Purchase Agreement and this Seller's Guide, each of which representations and warranties relates to a matter material to such purchase; and (ii) Seller's compliance with each of the agreements, requirements, terms, covenants and conditions set forth in the Loan Purchase Agreement and this Seller's Guide.

24. Subsequent to the sale of Loan ****1878 by Universal to LBB, LBB sold Loan ****1878 to LBHI.

25. Subsequent or simultaneously with the sale by LBB to LBHI, LBB assigned to LBHI all of its rights and remedies under the Agreement and Seller's Guide pertaining to Loan ****1878.

### Early Payment Default

26. The Agreement and Seller's Guide Sections 710 and 715 specify that LBHI or its agent may demand that Universal repurchase, and that Universal shall repurchase, any mortgage loan that suffers an Early Payment Default.

27. Universal acknowledged and agreed a loan may suffer from an Early Payment Default in one of two ways, as set forth in Seller's Guide Section 715:

> For Mortgage Loans prior-approved by Purchaser (i.e. as to which Purchaser underwrote the loan prior to Purchase), a mortgage loan has an early payment default if the first monthly payment due Purchaser is not made within thirty (30) days of its due date.

> For Mortgage Loans delivered pursuant to the Seller's Delegated Underwriting Authority, a Mortgage Loan has an early payment default if either the first or second monthly payment due the Purchaser is not made within 30 days of each such monthly payment's respective due date.

28. Universal further represented and warranted that in the event of a breach of any representation, warranty, or covenant contained in the Agreement or Seller's Guide, or in the event that any loan sold by Universal to Lehman suffers an Early Payment Default, Universal would repurchase the subject loan, as set forth in Seller's Guide Section 710:

> …if a loan becomes an Early Payment Default in accordance with Section 715 herein, Seller shall, at Purchaser's option, repurchase the related Mortgage Loan… at the Repurchase Price. Any such repurchase shall occur no later than thirty (30) days after the earlier of the date on which Purchaser notifies Seller of such breach or the date on which Seller knows of such breach.

29. Universal further promised to indemnify Lehman for any and all losses that in any way relate to or result from any act or failure to act or any breach of any warranty, obligation, representation, or covenant contained in the Agreement and Seller's Guide, as set forth in Section 711 of the Seller's Guide:

> In addition to any repurchase and cure obligations of Seller, and any and all other remedies available to Purchaser under this Seller's Guide and the Loan Purchase Agreement, Seller shall indemnify Purchaser…from and hold them harmless against all claims, losses, damages, penalties, fines, claims, forfeitures, lawsuits, court costs, reasonable attorney's fees, judgments and any other costs, fees and expenses that the Purchaser may sustain in any way related to or resulting from any act or failure to act or any breach of any warranty, obligation, representation or covenant contained in or made pursuant to this Seller's Guide or the Loan Purchase Agreement.

30. Universal also agreed to pay the reasonable attorney's fees incurred by LBHI in enforcing Universal's obligations, as set forth in Section 711 of the Seller's Guide:

> In addition to any and all other obligations of Seller hereunder, Seller agrees that it shall pay the reasonable attorney's fees of Purchaser incurred in enforcing Seller's obligations hereunder, including, without limitation, the repurchase obligation set forth above.

31. Universal had been granted delegated underwriting authority by letter dated October 7, 2005.

32. Pursuant to Section 715 of the Seller's Guide, and as set forth above, for loans purchased pursuant to the Seller's delegated underwriting authority, or eligible for delegated underwriting, the loan suffers an Early Payment Default if the borrower fails to make the first or second monthly payment due within 30 days of each such monthly payment's respective due date.

33. The first payment on Loan ****1878 was due from the borrower to LBHI's agent on September 1, 2006.

34. Loan ****1878 (Watermann) became an Early Payment Default because the borrower failed to make the first payment on the loan.

35. The borrower of Loan ****1878 also failed to make the second payment due.

36. The borrower of Loan ****1878 never made any of the payments due on the Loan.

37. LBHI, through its agent, first provided Universal with written notice on November 10, 2006, that Loan ****1878 became an Early Payment Default, but did not demand repurchase at that time.

38. LBHI next provided written notice to Universal that Loan ****1878 was an Early Payment Default and demanded that Universal indemnify LBHI for its losses when it filed its amended legal action (*see* ¶ 2 above) on June 24, 2012.

39. Universal has refused to indemnify LBHI, or to otherwise comply with its obligations under the Agreement and Seller's Guide with respect to the Loan ****1878.

40. Universal's failure and refusal to indemnify LBHI for its losses is a material breach of the Agreements and Seller's Guide.

## V. CLAIM FOR RELIEF

### FIRST CLAIM FOR RELIEF
(Breach of Contract)

41. LBHI hereby incorporates by reference the allegations set forth above as though fully set forth herein.

42. The Agreement and the Seller's Guide is a valid and enforceable contract that is binding upon Universal.

43. Lehman, Lehman's agents and any and all assignees of Lehman's rights have substantially performed all of their obligations under the Agreement and Seller's Guide.

44. Universal is obligated to indemnify LBHI for its losses incurred for Loan ****1878.

45. Universal breached the Agreement and Seller's Guide by breaching the representations, warranties, and/or covenants including but not limited to those described above in Section IV, and by refusing or otherwise failing to indemnify LBHI for its losses on Loan ****1878.

46. Universal's breaches of the Agreement and Seller's Guide as to Loan ****1878 resulted in actual and consequential damages to LBHI in excess of $100,000.00, plus prejudgment interest pursuant to New York law, attorneys fees, litigation costs and all other fees and costs provided by the Agreement, the exact amount of which to be proven by the evidence.

## VI. PRAYER FOR RELIEF

WHEREFORE, LBHI respectfully requests that this Court enter judgment in its favor and against defendant Universal as follows:

    (a) For all damages arising from or relating to Universal's breaches of contract, in an amount to be proven at trial;

(b) For an Order of this Court declaring that Universal is required to compensate Lehman immediately for all actual and consequential damages resulting from Universal's breaches of the Representations, Warranty, and Covenant provisions of the Agreement and Seller's Guide;

(c) For recoverable interest;

(d) For the costs and expenses incurred by LBHI in enforcing Universal's obligations under the Agreement and Seller's Guide, including attorneys' fees and costs and any expert witness fees incurred in litigation; and

(e) For such other relief as the Court deems just and proper.

Dated: January 16, 2013

Respectfully submitted,

By: _____ */s/ Christopher P. Carrington*
　　　　　Justin D. Balser
　　　　　Christopher P. Carrington
Email: justin.balser@akerman.com
Email: chris.carrington@akerman.com
**AKERMAN SENTERFITT LLP**
1400 Wewatta Street, Suite 500
Denver, Colorado 80202
Telephone: (303) 260-7712
Facsimile: (303) 260-7714
*Attorneys for Plaintiff, Lehman Brothers Holdings Inc.*